# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REGIS H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY BERRYHILL, Acting Commissioner, Social Security Administration, <br><br> Defendant. | No. 17 CV 6909 <br><br> Magistrate Judge Young B. Kim <br><br> March 21, 2019 |

## MEMORANDUM OPINION and ORDER

Regis H. ("Regis") seeks Supplemental Security Income ("SSI") based on his claim that the combination of congestive heart failure, hypertension, sleep apnea, chest pain, lower extremity edema, water retention, alcohol addiction, and morbid obesity prevents him from being able to perform full-time work. After the Commissioner of Social Security denied his application, Regis filed this lawsuit seeking judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgement. For the following reasons, Regis's motion is denied and the government's is granted:

## Procedural History

Regis filed his SSI application in November 2013, alleging a disability onset date of August 31, 2010. (Administrative Record ("A.R.") at 216-21.) After his

---

[1] In accordance with Internal Operating Procedure 22, this court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

application was denied initially and upon reconsideration, (id. at 73-92), Regis sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 133-44), which took place in June 2016, (id. at 22-72). Regis appeared at the hearing with his attorney. (Id. at 179, 201.) Thereafter, on November 8, 2016, the ALJ issued a decision concluding that Regis was not disabled and therefore not entitled to SSI. (Id. at 96-108.) When the Appeals Council denied Regis's request for review, (id. at 1-6), the ALJ's denial of benefits became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Regis timely filed this lawsuit seeking judicial review of the Commissioner's final decision, *see* 42 U.S.C. § 405(g); (R. 1), and the parties have consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 9).

**Background**

Regis was 37 years old when he applied for SSI, and he asserts that his symptoms became disabling when he was 34. He has limited education and limited work history. Although Regis testified that he worked as a barber for three years, (A.R. 32), the record shows that he reported income only in 2008, (id. at 32, 236). According to Regis, he stopped working because of numbness and pain in his hands. (Id. at 33-34.) He presented documentary and testimonial evidence in support of his application at his hearing.

**A.    Medical Evidence**

The treatment record begins on July 2, 2013, when Regis presented to the hospital with complaints of chest pain and pressure after being non-compliant with

2

his medication. (A.R. 384.) He reported feeling a sudden onset of chest pressure that resolved after he took his mother's prescription medication. (Id.) He was admitted into the hospital for overnight observation. (Id. at 383.) During his hospitalization, he underwent a stress echocardiogram, which did not reveal any abnormalities. (Id. at 409-10.) Regis was discharged the following day with a diagnosis of chest pain, hypertension, morbid obesity, and alcohol addiction. (Id. at 388.) He was instructed to follow up with Advanced Practice Nurse Ruth Shah and to bring with him his medications to the follow-up visit. (Id.) A little over a week later, on July 12, 2013, Regis met with Nurse Shah. (Id. at 689.) Regis brought in his prescriptions but had not filled them because they cost too much. (Id.) Nurse Shah counseled him on low-cost alternatives and the importance of taking his medications. (Id.) Regis was advised to follow up with his primary care doctor. (Id.)

On August 29, 2013, Regis met with Dr. Bassem Ibrahim. (Id. at 691.) Regis complained of daytime somnolence and bilateral leg swelling. (Id.) Dr. Ibrahim thought that Regis's drowsiness was the result of sleep apnea and ordered a sleep study. (Id. at 693.) He also thought that the swelling could be caused by sleep apnea. (Id.) Regis's body mass index ("BMI") was 63. (Id.)

On December 14, 2013, Regis reported to an emergency room with difficulty breathing. (Id. at 339.) Regis complained of shortness of breath, chest tightness, cough, and abdominal swelling. (Id.) He was admitted into the intensive care unit and tested positive for influenza, which was found to be the cause of his shortness of

breath and cough. (Id. at 342, 344, 354.) Regis was discharged on December 17, 2013, with a diagnosis of dyspnea, tachypnea, and upper respiratory infection. (Id. at 360.)

On December 26, 2013, Regis once again reported to the hospital complaining of chest pain and shortness of breath. (Id. at 453.) An electrocardiogram revealed "isolated ST elevation." (Id.) A physical examination revealed wheezing, irregular heart rhythm, and bilateral 1+ edema. (Id. at 455.) Regis was admitted for atrial fibrillation ("AFib") with rapid ventricular rate and for a non-ST-elevation myocardial infarction.[2] (Id. at 459.) His treating physicians considered performing a cardioversion but eventually decided against the procedure because Regis was considered high risk and because his AFib was under control with medication. (Id. at 462, 466, 486, 545-46, 550, 706.) On January 6, 2014, Regis was discharged with a diagnosis of AFib. (Id. at 553-54.) He was advised to follow up with a Coumadin Clinic. (Id. at 555.)

On April 8, 2014, Regis met with Dr. Abina Goncalves, who has treated Regis during the relevant period. (Id. at 741-44, 747-68, 795-800, 888-930.) Dr. Goncalves noted that Regis reported a history of hypertension, chronic heart failure, AFib, and thigh pain.[3] (Id. at 742.) Associated symptoms of his heart failure included lower

---

[2] AFib is a medical condition characterized by an irregular heartbeat that causes the lower chambers of the heart to beat too quickly. *See* https://www.webmd.com/heart-disease/atrial-fibrillation/afib-rapid-response#1 (last visited on March 14, 2019).

[3] According to Regis, he was diagnosed with chronic heart failure at Stroger hospital in 2010. (Id. at 344, 457.) Although the agency sent a request for records asking for his treatment notes, the hospital responded that it had no treatment notes concerning Regis. (Id. at 445-48.)

4

extremity swelling. (Id.) On exam, his BMI was 57, (id. at 743), and there was trace edema in his lower extremities, (id. at 744). On May 6, 2014, Regis was diagnosed with diabetes and started on Metformin. (Id. at 748-50.)

On June 13, 2014, Regis followed up with Dr. Goncalves. (Id. at 754-55.) He reported blood in his stool and was referred to the ER for further evaluation. (Id.) That same day Regis presented to the ER where it was noted his INR level was subtherapeutic. (Id. at 729-40.) He was then discharged from the hospital in stable condition. (Id. at 734.) On July 3, 2014, Regis followed up with Dr. Goncalves and trace edema was again noted in his lower extremities. (Id. at 756-58.)

On December 12, 2014, Regis was again sent to the ER by Dr. Goncalves because he ran out of medication. (Id. at 769, 795.) Dr. Goncalves noted that Regis was in poor compliance with his medications and recommended that he be admitted into the hospital. (Id. at 778.) Regis presented to the ER and appeared in no acute distress. (Id. at 769-70.) He reported not taking his medication for several weeks and his INR levels were subtherapeutic. (Id. at 771.) A cardiac workup, including an echo of his left ventricular functions, was normal. (Id. at 772, 781, 790-91.) Regis was discharged in stable condition. (Id. at 772.)

On February 26, 2016, Dr. Goncalves submitted a medical source statement.[4] (Id. at 880-83.) Dr. Goncalves noted that Regis suffers from diabetes, hypertension, heart failure, AFib, sleep apnea, and depression. (Id. at 880.) She opined that Regis

---

[4] Dr. Goncalves also submitted a medical source statement regarding Regis's obesity. (Id. at 884-87.) The doctor's proffered limitations in the two medical source statements were virtually identical. (Id.)

5

could sit for 20 minutes at a time for a total of 2 hours in an 8-hour work day, stand for 15 minutes at a time, and stand/walk for less than 2 hours per work day. (Id. at 881.) She also noted that Regis would need to take unscheduled breaks every 20 minutes, which should last at least 10 minutes. (Id.) Dr. Goncalves recommended that Regis be provided with a sit/stand option and an opportunity to elevate his legs at chair height for half the workday because of swelling. (Id. at 881-82.) She also noted that Regis would have limitations with reaching, handling, or fingering, (id. at 882), be off-task for more than 25 percent of the work day, and miss more than four days of work per month, (id. at 883).

## B. Plaintiff's Hearing Testimony

Regis described his work history, symptoms, and daily activities at the June 2016 hearing. Regis testified that he cannot sit or stand for prolonged periods of time because his legs go numb. (A.R. 33-34, 41-42.) He stated that he can stand for about 10 to 15 minutes before needing to sit down because of back and hip pain. (Id. at 42.) He also testified that he can sit for only about 30 minutes at a time before needing to stand up or stretch his legs. (Id. at 41.) In addition, Regis noted that he has difficulty walking and breathing. (Id. at 35-36, 48-49.) He said that he needs to sit down periodically and catch his breath when he walks his daughter to school and that he experienced pain in his hips and swelling in his feet after chaperoning his daughter on a school filed trip. (Id. at 36, 50-52.) Regis also testified that he elevates his feet to stop the numbness. (Id. at 52.)

6

As far as daily activities, Regis testified that he lives with his girlfriend and two daughters. (R. 30-31.) He stated that he does not do yardwork but takes care of the children while his girlfriend works and does household chores but takes his time competing them. (Id. at 46-47.) He can also go grocery shopping and bathe and dress himself. (Id. at 40-43.)

C. **Vocational Expert's Hearing Testimony**

The ALJ also heard testimony from a vocational expert ("VE") about the jobs available to someone with Regis's limitations. The VE determined that Regis's past relevant work as a barber would be classified as light, and according to the Dictionary of Occupational Titles, has an SVP level of six. (A.R. 60.) According to the VE, Regis performed the job at the light level and at an SVP level of three. (Id.)

The ALJ asked a series of increasingly restrictive hypotheticals regarding an individual with the same age, education, and work experience as Regis. The ALJ began by asking the VE to assume that this individual was limited to light work and was further restricted to occasional use of stairs, could never use ladders, ropes, or scaffolds, was limited to frequent balancing and occasional stooping, kneeling, and crouching, and must avoid concentrated exposure to cold, heat, humidity, pulmonary irritants such as fumes, odors, dusts, and gases, poorly ventilated areas, chemicals, and dangerous machinery. (Id. at 60-61.) The VE testified that this person could perform Regis's past work both as he performed it and as generally performed. (Id.) In addition, this individual could work as a cashier, cafeteria attendant, inspector, and packer. (Id. at 62.)

7

Next the ALJ asked the VE to assume that the individual was further restricted to frequent bilateral reaching and overhead reaching and occasional handling bilaterally. (Id.) The VE testified that this individual could not perform Regis's past work but could work as an usher, door greeter, and low traffic cashier. (Id. at 63-64.) The ALJ then included a sit/stand opinion, in which the individual could alternate between sitting and standing in one-hour intervals if he was not off task more than 10% percent of the workday. (Id. at 64.) The VE testified that the individual could still perform usher, door greeter, and cashier jobs. (Id. at 65.)

For the fourth hypothetical, the ALJ asked the VE to assume the individual was limited to sedentary work and was further restricted to occasional use of stairs, could never climb ladders, ropes, or scaffolds, could only engage in frequent balancing and occasional stooping, kneeling, and crouching, could frequently manipulate bilaterally, should be allowed to alternate between sitting and standing in one-hour intervals so long as he was not off-task more than 10 percent of the workday, and must avoid concentrated exposure to cold, heat, humidity, pulmonary irritants such as fumes, odors, dusts, and gases, poorly ventilated areas, chemicals, and dangerous machinery. (Id.) The VE testified that the person could not do Regis's past work but could work as a sorter, visual inspector, and cashier. (Id. at 65-66.)

The VE also testified that if the individual were limited to occasional manipulatives at the sedentary level he could not perform Regis's past work or any other work. (Id. at 66-67.) In addition, the VE stated that if the individual were required to elevate his legs to hip height for half the work day, the person could not

8

work. (Id. at 69-70.) The VE also noted that off-task time must not exceed 10 percent and that absences must not exceed 10 days over a 12-month period. (Id. at 67.)

**D.     The ALJ's Decision**

On November 8, 2016, the ALJ issued a decision denying Regis's disability claim. (A.R. 96-108.) The ALJ followed the standard five-step sequence in analyzing Regis's claim. *See* 20 C.F.R. § 416.920(a). At step one the ALJ found that Regis had not engaged in substantial gainful activity after his disability onset date. (Id. at 98.) At step two the ALJ deemed the following impairments severe: obstructive sleep apnea, congestive heart failure, obesity, AFib, hypertension, and diabetes mellitus. (Id.) At step three the ALJ determined that Regis did not have an impairment or combination of impairments that met the severity of a listed impairment. (Id. at 99.) Before turning to step four, the ALJ determined that Regis had the residual functional capacity ("RFC") to perform light work with additional limitations. (Id. at 100-08.) Based on that RFC, the ALJ determined at step four that Regis could perform his past work. (Id. at 106.) The ALJ thus concluded that Regis is not disabled. (Id. at 108.)

**Analysis**

Regis raises three main arguments in his request for reversal: (1) the ALJ's proffered RFC determination is flawed; (2) the ALJ erred in evaluating his subjective complaints; and (3) the ALJ impermissibly ignored the VE's testimony. The court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012)

9

(internal quotation and citation omitted). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal may be required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

### A. RFC Determination

Regis argues that the RFC determination is flawed because the ALJ failed to: (1) account for his need to elevate his legs; (2) sufficiently explain how he accommodated Regis's sleep apnea; and (3) adequately consider the effects of his obesity. The RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may affect his or her capacity to do work-related physical and mental activities." *See* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Furthermore, the RFC represents "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."). To support the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. In other words, the ALJ must explain how he reached his conclusions and build an "accurate and logical bridge" from the evidence to his conclusions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Regis begins by arguing that the decision is not supported by substantial evidence because the ALJ failed to accommodate his need to elevate his legs. (R. 17, Pl.'s Mot. at 6-8.) In Regis's view, the ALJ impermissibly "played doctor" when he rejected Dr. Goncalves's opinion that he had to elevate his legs to waist level for half the workday. (A.R. 882.) The court disagrees.

Contrary to Regis's argument, the ALJ in this case did not substitute his judgment for that of Dr. Goncalves. Rather, the ALJ evaluated the doctor's opinion and concluded that it was not entitled to controlling weight. *See Henke v. Astrue*, 498 Fed. Appx. 636, 639 (7th Cir. 2012) (explaining that an ALJ does not play doctor by examining the medical record and determining that a doctor's conclusions are unsupported by the doctor's own treatment notes or contradicted by other medical evidence). The ALJ noted that Dr. Goncalves's opinion was not supported by the evidence in the record, including her own treatment notes. (A.R. 105.) For instance, the ALJ explained that although Dr. Goncalves opined that Regis had to elevate his legs and shift positions during the day because of swelling and joint pain, her own treatment notes describe the swelling as either minimal or nonexistent and the objective record does not support the alleged joint pain. *See Richison v. Astrue*, 462 Fed. Appx. 622, 625 (7th Cir. 2012) (affirming the ALJ's decision to discount a treating physician's opinion that claimant needed to elevate his legs because it was inconsistent with the doctor's own treatment notes). In addition, the ALJ discounted the opinion because Regis did not wear compression stockings and there was no mention in the treatment notes that Regis needed to elevate his legs. (A.R. 105.)

11

Notably, Regis does not challenge the ALJ's reasoning and instead argues that the ALJ should have submitted the medical statement "for medical consultant review or consulted a medical expert at the hearing." (R. 17, Pl.'s Mot. at 6-8.) An ALJ is required to "consult with an expert only when, in the ALJ's opinion, the new evidence might cause an initial medical opinion to change." *Johnson v. Berryhill*, 745 Fed. Appx. 247, 250 (7th Cir. 2018) (citing SSR 96-6p, 1996 WL 374180, at *4). But here the ALJ adequately explained why Dr. Goncalves's opinion should be discounted and, thus, "the law did not require [the ALJ] to consult a medical expert." *Id*.

Regis also argues that the ALJ's consideration of his sleep apnea was inadequate. Regis maintains that the ALJ did not explain how avoiding concentrated exposure to hazardous machinery accommodated his sleep apnea in light of his testimony that he experiences daytime somnolence. (R. 17, Pl.'s Mot. at 8.) Although not clearly stated, Regis seems to argue that the ALJ's decision was not sufficiently supported by a narrative discussion of the evidence as required by Social Security Ruling 96-8p. To the extent Regis is challenging the ALJ's narrative discussion, the court finds that the ALJ provided enough discussion and his decision was supported by substantial evidence. The ALJ specifically reviewed the medical evidence regarding Regis's sleep apnea and concluded that his symptoms improved with treatment. (A.R. 104.) In addition, the ALJ cited the opinions of state agency medical consultants, whose sleep apnea limitations he incorporated into the RFC determination. (Id. at 106.) Therefore, the ALJ provided an appropriate narrative discussion and his RFC determination was supported by substantial evidence. *See*

12

*Knox v. Astrue*, 327 Fed. Appx. 652, 657 (7th Cir. 2009) ("The ALJ satisfied the discussion requirements by analyzing the objective medical evidence, [claimant]'s testimony (and credibility), and other evidence.").

Next Regis claims that the ALJ failed to properly consider the effects his obesity had on his ability to work. (R. 17, Pl.'s Mot. at 8-10.) Regis's argument is without merit. First, the ALJ expressly addressed the impact of Regis's obesity on his overall ability to function, including by acknowledging that his weight exacerbates his other symptoms and by incorporating limitations into the RFC to account for those symptoms. (A.R. 104, 106.) Second, Regis does not claim that the effects of obesity, in combination with his other impairments, prevent him from working. Rather, in his view, the effects of obesity, when coupled with his other impairments, limit him to sedentary work, consistent with the state agency physicians' opinions that he can perform work only at the sedentary level.

Even if Regis were correct that a limitation to sedentary work rather than light work is necessary to accommodate the impact of his obesity on his other symptoms, the court finds that any error on the ALJ's part was harmless. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (noting that ALJ's determination that claimant could perform light work was harmless because substantial evidence supported conclusion that claimant could also perform sedentary work); *see also Cooley v. Berryhill*, 738 Fed. Appx. 877, 881 (7th Cir. 2018). At the hearing, the ALJ specifically asked the VE whether a hypothetical individual with the RFC the ALJ assigned to Regis, a limitation to sedentary work, and more restricted use of the upper extremities could

13

perform any jobs. Even under this alternative RFC, the VE testified that a significant number of jobs existed. (A.R. 65-66.) Therefore, the court is satisfied that the outcome of the ALJ's decision would have been the same even if the ALJ had concluded that Regis's obesity supports an RFC for sedentary work. *See Guranovich v. Astrue*, 465 Fed. Appx. 541, 543 (7th Cir. 2012) (affirming ALJ's decision, in part, by noting that even under an alternative RFC, claimant could have worked in a significant number of jobs). For these reasons, Regis has not shown that the ALJ's RFC assessment lacks the support of substantial evidence.

**B.     Subjective Complaints Analysis**

Regis contends that the ALJ committed multiple errors in assessing his subjective complaints. (R. 17, Pl.'s Mot. at 10-14.) Credibility determinations by the ALJ are given deference because ALJs are in a special position to hear, see, and assess witnesses. *Murphy v. Colvin*, 759 F. 3d 811, 815 (7th Cir. 2014). "Therefore, a court will only overturn an ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* at 816. In drawing conclusions about a claimant's credibility, "the ALJ must explain her decision in such a way that allows the court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.*

Regis begins by taking issue with the ALJ's decision to discount his testimony regarding his cardiovascular problems, including AFib. (R. 17, Pl.'s Mot. at 11.) The ALJ in this case concluded that Regis's cardiovascular problems were controlled by

14

medication. (A.R. 103.) The ALJ noted that doctors did not recommend a cardioversion and instead continued to treat Regis's AFib with medications. (Id.) In other words, the ALJ seemed to reason that Regis did not undergo cardioversion because his symptoms were controlled by medication. Regis objects, insisting that cardioversion was "not pursued solely because of [his] financial problems and lack of insurance." (R. 17, Pl.'s Mot. at 11.) Regis's argument is unavailing. Although some treatment notes mention financial problems, a review of the record confirms that doctors decided against the procedure because Regis was considered high risk and his symptoms were controlled with medication, not because of his purported inability to afford the procedure. (A.R. 466, 545-46, 550, 706.) Accordingly, the court finds no error in the ALJ's decision to discount Regis's testimony because his cardiovascular issues were controlled with medication. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (explaining that "controllable conditions do not entitle one to benefits" (internal quotation omitted)); *see also Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) (affirming decision to discount statements about the severity of symptoms because "the record medical evidence established that those symptoms are largely controlled with proper medication and treatment").

Next Regis takes issue with the ALJ's reasoning for discounting his testimony regarding daytime somnolence. According to Regis, the ALJ "relied heavily on alleged non-compliance with treatment" without considering his financial inability to undergo a sleep study. (R. 17, Pl.'s Mot. 17 at 11.) The court disagrees. Although the ALJ did rely in part on Regis's failure to seek treatment, that was not the only

15

reason the ALJ provided for discounting Regis's description of his daytime drowsiness. The ALJ also discounted his testimony because his symptoms improved with treatment, something Regis does not challenge. *See Truelove v. Berryhill*, No. 18-2119, 2018 WL 6242284, at *4 (7th Cir. Nov. 28, 2018) (noting that an ALJ "may rely on medical evidence that the condition is treated and controlled by medication").

In addition, Regis argues that the ALJ improperly relied on his activities of daily living. (R. 17, Pl.'s Mot. at 12-14.) The ALJ's discussion of Regis's daily activities in this case may not have been ideal, but he did not place undue weight on Regis's daily activities as he provided several other reasons for his adverse credibility determination. *See Schreiber v. Colvin*, 519 Fed. Appx. 951, 961 (7th Cir. 2013) (noting that even though the ALJ's discussion of "activities of daily living was not ideal, the ALJ provided a sufficient basis for his adverse credibility determination"); *see also Richards v. Berryhill*, 743 Fed. Appx. 26, 29 (7th Cir. 2018). For instance, the ALJ noted the discrepancies between Regis's complaints of numbness and tingling and the lack of evidence regarding those symptoms in the treatment notes. (A.R. 103.) Furthermore, as discussed above, the ALJ repeatedly stated that many of Regis's symptoms were controlled with medication, something Regis does not dispute. (Id. at 103-04.) Therefore, the court finds that the ALJ's subjective complaints analysis is supported by substantial evidence. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are[.]" (emphasis in original)).

16

## C. VE's Hearing Testimony

Finally, Regis argues that the ALJ's failure to discuss favorable VE testimony amounts to reversible error. (R. 17, Pl.'s Mot. at 10.) The VE testified at the hearing that no jobs would be available if the hypothetical individual were limited to sedentary work and needed to elevate his legs at hip height for half the workday. (A.R. 69-70.) Regis contends that the ALJ was required to discuss these hypotheticals in his decision even though they do not match the limitations the ALJ included in Regis's RFC assessment.

Regis cites *Olson v. Astrue*, No. 08 CV 996, 2009 WL 2365511, at *13 (N.D. Ill. March 16, 2009), and *Connor v. Shalala*, 900 F. Supp. 994, 1003-04 (N.D. Ill. 1995), in support of his argument that an ALJ's failure to address favorable VE testimony requires reversal. Regis's reading of these cases is too broad because neither stands for the proposition that an ALJ commits reversible error by failing to discuss every response to a hypothetical that a VE provides in the claimant's favor. *See Virden v. Colvin*, No. 14 CV 1219, 2015 WL 5598810, at *13 (C.D. Ill. Sept. 22, 2015) (rejecting the same argument); *see also Heuschmidt v. Colvin*, No. 14 CV 4377, 2015 WL 7710368, at *9 (N.D. Ill. Nov. 30, 2015) (same). In *Olson*, the court did not criticize the ALJ for failing to discuss VE testimony. 2009 WL 2365511, at *13. Rather, the court took issue with the ALJ's failure to resolve "the question of whether a person with moderate . . . limitations in concentration, persistence or pace would be off task for as much as five to ten minutes an hour." *Id.* The court explained that this unresolved issue was critical given the VE's off-task testimony. *Id.* Similarly, in

17

*Connor*, the court did not remand the matter back to the agency because the ALJ failed to discuss the VE's testimony. 900 F. Supp. 994, 1003-04. Instead, the court noted that the ALJ's failure to address testimony regarding potential blackouts was problematic in light of the VE's testimony that if an individual passed out as much as the plaintiff claimed, they would not be able to sustain full-time work. *Id.*

Unlike *Olson* and *Connor*, there were no ambiguities or unresolved issues surrounding the VE's testimony in this case with respect to a hypothetical limitation requiring leg elevation during half the workday. As discussed above, the ALJ adequately explained why he rejected Dr. Goncalves's opinion regarding leg elevation. Because the ALJ gave supported reasons for excluding the leg-elevation requirement from the RFC assessment, he was not required to discuss the VE's response to a hypothetical involving that specific limitation, and remand on this issue is not warranted.

## Conclusion

For the foregoing reasons, Regis's motion for summary judgment is denied, the government's is granted, and the Commissioner's decision is affirmed.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge